IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)   CHICKASAW NATION and | ) | |
| (2)   CHOCTAW NATION OF OKLAHOMA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-927-W |
| | ) | |
| (1)   MARY FALLIN, in the official capacity | ) | |
| as Governor of the State of Oklahoma; | ) | |
| (2)   RUDOLF JOHN HERRMANN, | ) | |
| (3)   TOM BUCHANAN, | ) | |
| (4)   LINDA LAMBERT, | ) | |
| (5)   FORD DRUMMOND, | ) | |
| (6)   ED FITE, | ) | |
| (7)   MARILYN FEAVER, | ) | |
| (8)   KENNETH K. KNOWLES, | ) | |
| (9)   RICHARD SEVENOAKS, and | ) | |
| (10)   JOE TARON, each in her or his official | ) | |
| capacity as a member of the | ) | |
| Oklahoma Water Resources Board; | ) | |
| (11)   J. D. STRONG, Executive Director of | ) | |
| the Oklahoma Water Resources Board in | ) | |
| his official capacity; | ) | |
| (12)   CITY OF OKLAHOMA CITY, an | ) | |
| Oklahoma municipal corporation; | ) | |
| (13)   OKLAHOMA CITY WATER UTILITY | ) | |
| TRUST, a public trust for the benefit of the City of | ) | |
| Oklahoma City, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**REPLY TO TRIBES' RESPONSE TO OKLAHOMA WATER RESOURCES
BOARD'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.
12(b)(1), 12(b)(7), and 19 [Doc. 88]**

# TABLE OF CONTENTS

**Page**

TABLE OFAUTHORITIES ................................................................................. ii

ARGUMENT AND AUTHORITIES ................................................................. 2

I.    The Response mischaracterizes both the Tribes' requested relief and the controlling caselaw that establishes that the Eleventh Amendment bars the Complaint as against the OWRB Defendants. ............................................................... 2

    A. The Tribes mischaracterize the Complaint's claims ............................................ 2

    B. The Tribes mischaracterize the controlling authority that defines OWRB's Eleventh Amendment immunity .......................................................... 4

II.    The Response misses the Rule 19 mark because it fails to recognize the sovereign interests affected by the Complaint ........................................................ 10

    A. The Tribes' arguments against OWRB's indispensability rest on continued mischaracterization of the Tribes' claims ........................................................ 11

    B. The Tribes ignore the effect on Federal contracts of the Tribes' claims to "prior and paramount" regulatory authority ................................................................ 12

CONCLUSION ................................................................................... 15

## TABLE OF AUTHORITIES

**Page**

**UNITED STATES SUPREME COURT CASES**

*Ex Parte Young*,
209 U.S. 123 (1908) .......................................................................1, 2, 4-6, 8,10, 11

*Green v. Monsour*,
474 U.S. 64 (1985) ............................................................................................ 9, 10

*Idaho v. Coeur d'Alene Tribe*,
521 U.S. 261 (1997) ........................................................................................ 4-7, 9-11

*Pennhurst State School & Hosp. v. Haldeman*,
465 U.S. 89 (1984) .............................................................................................. 7

*Republic of Philippines v. Pimentel*,
553 U.S. 851 (2008) ........................................................................................... 13

*Seminole Tribe of Florida v. Florida*,
517 U.S. 44 (1996) ............................................................................................. 10

*Verizon Maryland v. Public Service Commission of Maryland*,
535 U.S. 635 (2002) .......................................................................................... 5, 7

*Virginia Office for Protection & Advocacy v. Stewart*,
131 S. Ct. 1632, ___ U.S. ___ (2011) ............................................................. 5, 7

**OTHER FEDERAL COURT CASES**

*Choctaw & Chickasaw Nations v. Seitz,*
193 F.2d 456 (10th Cir. 1951) ........................................................................... 14

*Davis v. United States*,
343 F.3d 1282 (10th Cir. 2003) ......................................................................... 13

*Elephant Butte Irrigation District v. Dept. of the Interior*,
160 F.3d 602 (10th Cir. 1998) ............................................................................ 9

*Hill v. Kemp*,
478 F.3d 1236 (10th Cir. 2007) .......................................................................2, 5-9

## TABLE OF AUTHORITIES

**Page**

*W. Mohegan Tribe & Nation v. Orange Cnty.*,
  395 F.3d 18 (2d Cir. 2004) ................................................................. 6

*Muscogee (Creek) Nation v. Pruitt*,
  2012 WL 627967 (10th Cir. 2012) ....................................................... 9

*Navajo Tribe of Indians v. New Mexico*,
  809 F.2d 1455 (10th Cir. 1987) ......................................................... 15

*Osage Nation v. Oklahoma,*
  Fed. Appx. 13 (10th Cir. 2007) ............................................................ 9

*Powder River Basin Res. Council v. Babbit,*
  54 F.3d 1477 (10th Cir. 1995) ............................................................. 9

*Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.,*
  94 F.3d 1407 (10th Cir. 1996) ........................................................... 14

*Tarrant Regional Water District v. Hermann,*
  2007 WL 3226812 (W.D. Okla. 2007) ................................................ 11

*Tarrant Regional Water District v. Sevenoaks,*
  545 F.3d 906 (10th Cir. 2008) ............................................................. 9

*Timapanagos Tribe v. Conway,*
  286 F.3d 1195 (10th Cir. 2002) ........................................................... 9

*United States v. Oklahoma*,
  No. Civ 98-00521 (N.D. Okl. Sept. 3, 2009) ........................................ 8

*Vann v. Salazar,*
  D.D.C. Civ. No. 03-1711 (4HK), 2011 WL4953030*8, (2011) ............ 14

*Ysleta del Sur Pueblo v. Raney*,
  199 F.3d 281, 290 (5th Cir. 2000) ........................................................ 6

## FEDERAL STATUTES

25 U.S.C. §177 ........................................................................... 8, 12, 13

Defendants, Members and Executive Director of the Oklahoma Water Resources Board ("OWRB Defendants"), submit this reply to the Plaintiffs Chickasaw and Choctaw Nations' Response to the OWRB Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(7), and 19 [Doc. 66].   OWRB Defendants' Motion asserts that the Tribes' Second Amended Complaint ("Complaint") is barred by the sovereign immunity of the OWRB and the United States under two legal doctrines:  (1) the Complaint fails to pierce the Eleventh Amendment immunity of the Oklahoma Water Resources Board, an agency of the State of Oklahoma ("OWRB"), because it does *not* seek only prospective injunctive relief and thus *cannot* make an end-run around the OWRB's sovereign immunity by invoking the doctrine of *Ex parte Young*, 209 U.S. 123 (1908); and, (2) given the impact on the OWRB and the United States of the Tribes' demands for declaratory relief granting them regulatory primacy over the alleged "Treaty Territory" waters, the OWRB and the United States are indispensable parties.   The fundamental fallacies underlying the Tribes' entire Response are: (1) its repeated and utterly false representation that the Complaint seeks only "prospective injunctive relief," and (2) its total failure to address the impact of its claims for declaratory judgment that, since 1830, the Tribes have had "prior and paramount" regulatory authority over all "Treaty Territory" waters.   Consequently, the Response never forthrightly addresses the impact of its claims on the sovereign interests of the OWRB and the United States.   Given the profound impact of the Tribes' declaratory judgment claims, both the Eleventh Amendment and Rule 19(b) require dismissal.

**Argument and Authorities**

**I.     The Response mischaracterizes both the Tribes' requested relief and the controlling caselaw that establishes that the Eleventh Amendment bars the Complaint as against the OWRB Defendants.**

The Eleventh Amendment precludes the claims alleged against the OWRB Defendants because the Tribes' claims are "the functional equivalent of impermissible retrospective relief." *Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). The Tribes' claims *are not* prospective only: they are the regulatory equivalent of a quiet title. Supreme Court and Tenth Circuit caselaw recognize that *Ex parte Young* does not waive immunity for a claim seeking a total ouster of the State's sovereign interests.

**A. The Tribes mischaracterize the Complaint's claims.**

The Tribes' contention that "[v]irtually all of this relief—declaratory and injunctive is prospective," Response at 8, is patently false. In fact, the Complaint seeks a declaratory judgment that the Tribes have:

- "[S]overeign and proprietary rights to waters in the Treaty Territory, and regulatory authority over those waters, *that are prior and paramount to any water rights or regulatory authority in Treaty Territory waters claimed under State law*." Complaint ¶ 87(a);
- "[W]ater rights and regulatory authority over Treaty Territory water resources [including] *rights to the use and dominion over water* to fulfill the homeland purposes of the 1830 Treaty by meeting present and future needs . . .exclusive of any interference under color of state law or state jurisdiction." Complaint ¶ 87(b);
- "[The] *right to control water resources in the Treaty Territory*." Complaint ¶ 99(f); and,
- "[W]ater rights and regulatory authority over Treaty Territory water resources [that] bar the Defendants from withdrawing, exporting, and selling Treaty Territory water resources *without the consent of the Nations*." Complaint ¶ 99(c)(3). (Emphasis added.)

2

The Tribes cannot disguise these claims as requesting only "prospective relief." These requests for declaratory relief substantively and unequivocally mount a comprehensive challenge to "any [State] water rights or regulatory authority" over water resources in the alleged "Treaty Territory," not just prospectively, but from Statehood to the present.

Contrary to the Tribes' repeated assertions, Paragraph 99(c) of the Complaint does not limit the retroactive effect of the relief they seek:

> The 1830 Treaty and other sources of Federal law secure to the Plaintiff Nations sovereign and proprietary rights to waters in the Treaty Territory, and regulatory authority over those waters, that are prior and paramount to any water rights or regulatory authority in Treaty Territory waters claimed under State law.  _Although Plaintiff Nations do not concede the Board's authority to issue permits_, Plaintiff Nations will not challenge any _current use_ of water pursuant to any existing permits. (Emphasis added.)

The Tribes' attempt to mollify concerns by this cleverly crafted disclaimer, that they "will not challenge any _current use_ of water," while admitting outright that they "do not concede the Board's authority to issue permits," makes plain that the Tribes intend their claims to invalidate all existing OWRB-issued permits and OWRB's authority over those permits.  The Tribes' subtle disclaimer affords no protection to OWRB and scant assurance to current permit holders.  The regulation claims would threaten OWRB's interest in the continued validity of its prior permitting actions and its ability to realize the intended benefits from it investments in water projects in the Treaty Territory.  As to existing permit holders, the Tribes' regulatory claims threaten to invalidate their OWRB-issued permits, putting their permit rights at risk to all other users—and to the Tribe—

3

while adamantly opposing the only state court adjudication, the only proceeding that can protect the rights of all users.

These declaratory relief claims are not "prospective only," they assert, one hundred-plus years after the fact, that since statehood, Oklahoma, OWRB, and its predecessor agencies, have lacked authority to regulate water in the alleged Treaty Territory as a matter of law. The relief the Tribes request would invalidate all permits OWRB or its predecessors have issued from 1907 to the present, leaving the State and water users subject to presently unidentified tribal regulation. The Tribes' claims would nullify the premise of regulatory authority on which OWRB has made substantial commitments for public works and regulatory actions, studies, and programs in the alleged "Treaty Territory." *See* OWRB Motion to Dismiss Brief ("OWRB Br.") at 4-5, 7-14. The Eleventh Amendment, and the *Ex parte Young* fiction, do not allow anyone, including a tribe, to sue a State to usurp its regulatory jurisdiction over a region of the State, particularly by one who also claims "prior and paramount" rights to the property that is the subject of the claim.

### B. The Tribes mischaracterize the controlling authority that defines OWRB's Eleventh Amendment immunity.

In their Response, the Tribes make the unsupportable claim that both the Supreme Court and Tenth Circuit have held that a complaint seeking prospective injunctive relief necessarily pierces Eleventh Amendment immunity. Of course, *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 281-83 (1997), specifically held that, notwithstanding tribal claims framed as requests for prospective injunctive relief, the retroactive effect of the

declaratory relief the tribes requested required dismissal of the complaint under the Eleventh Amendment. Justice O'Connor's concurrence clarified that holding. *Id.* at 296 (O'Connor, J., concurring). The Tribes' implied contention that there is nothing left of the holding in *Coeur d'Alene* is just plain wrong, as reflected by *Virginia Office for Protection & Advocacy v. Stewart,* 131 S. Ct. 1632, 1641, ___ U.S. ___, ___ (2011) (quoting with approval *Coeur d'Alene*'s holding that *Ex parte Young* does not apply to an action that would "extinguish . . . the State's control over a vast reach of land and waters long deemed by the State to be an integral part of its territory.").

The Tenth Circuit recognizes the vitality of *Coeur d'Alene* in a case such as this. *Kemp*, 478 F.3d at 1259, on which the Tribes rely, Response at 4, explains the basis for OWRB's defense here, recognizing that *Ex parte Young* applies only when the relief requested may be "*properly characterized* as prospective." (emphasis added). In fact, immediately following the language the Tribes quote, Judge Gorsuch's opinion in *Kemp* reviews and clarifies the effect of the Supreme Court's decision in *Verizon Maryland v. Pub. Serv. Comm'n of Maryland,* 535 U.S. 635 (2002), on *Coeur d'Alene,* stating that *Verizon* requires the court to "proceed immediately . . . to the 'straightforward [or so one might hope] inquiry' whether the relief requested is 'properly' characterized as prospective or is indeed the functional equivalent of impermissible retrospective relief." *Kemp*, 478 F.3d at 1259 (alteration in original) (quoting *Verizon*, 535 U.S. at 645).

Although rejecting immunity on the facts of *Kemp,* Judge Gorsuch distinguished the "literal land grab effort made by the plaintiffs in *Coeur d'Alene*." *Id.* at 1260.[1]

The Tribes' Complaint here impermissibly seeks both types of relief that *Kemp* states the Eleventh Amendment continues to bar: the Complaint requests "the functional equivalent of impermissible retrospective relief" and requests relief analogous to the "literal land grab effort made by the plaintiffs in *Coeur d'Alene*." *Id.* The Tribes' request for a declaration of their "prior and paramount" rights to regulate and control "Treaty Territory" waters would void countless permitting and regulatory actions of OWRB. That claim would also invalidate the legal premise underlying OWRB's investments and its actions in undertaking management and payment obligations for Sardis Reservoir pursuant to a federal promise in the 1974 Sardis Contract that OWRB would have regulatory authority over the Lake. *See* OWRB Br. at 4-5, 12-14. The Tribes' regulation claim threatens OWRB's interests, and federal interests, in the Sardis project and the other projects in which federal and state entities are accorded regulatory and use rights. The Tribes only response to the OWRB Defendants' Brief on these points is to merely state the Complaint does not expressly challenge the 1974 Contract or other agreements.[2]

---

[1] *Kemp* cited with approval other cases that had followed *Coeur d'Alene* in situations comparable to the present case. 478 F.3d at 1260 n.28 (citing *W. Mohegan Tribe & Nation v. Orange County*, 395 F.3d 18, 23 (2d Cir. 2004), (*Ex parte Young* inapplicable where tribal claims involved "core issues of land, state regulatory authority, and sovereignty expressly examined by the *Coeur d'Alene* Court."); *see also Ysleta del sur Pueblo v. Raney*, 199 F.3d 281, 290 (5th Cir. 2000) (no waiver where claims to property would "alter the State's regulatory control over the Property.").

[2] This, too, is false: the Tribes' claim, Complaint, ¶ 86, that the June 2010 Transfer Agreement violates 25 U.S.C. § 177, which would render it render it void and of no "validity in law or equity." *See infra* Point II.B.

But the Complaint's claim to "prior and paramount" regulation of "Treaty Territory" waters would conflict with express terms of the 1974 Contract, and the issue under the Eleventh Amendment is the "substance" of their claims. *See Kemp*, F.3d 478 at 1259 (following *Verizon*, the sole question becomes whether the relief sought is prospective only, "not just in how it is captioned but also in its substance"); *accord Virginia Office for Protection & Advocacy,* 131 S. Ct. at 1639 (the "general criterion for determining when a suit is in fact against the sovereign is the *effect* of the relief sought.") (emphasis in original) (quoting *Pennhurst State School & Hosp. v. Haldeman,* 465 U.S. 89, 107 (1984)).

The Tribes' Complaint reveals a singular purpose: a hydrologic "land grab," the equivalent of a quiet title, asserting prior and paramount title and regulatory power that would invalidate countless water rights permits, usurp OWRB's regulatory authority over all water in the "Treaty Territory," and impose the Tribes' consent on at least any use of such water outside the "Treaty Territory." As Justice O'Connor held in the now-dispositive opinion in *Coeur d'Alene*, the assertion of a right to control use of property by one who also claims paramount title is fundamentally equivalent to a quiet title suit: "Where a plaintiff seeks to divest the State of all regulatory power over submerged lands—in effect, to invoke a federal court's jurisdiction to quiet title to sovereign lands— it simply cannot be said that the suit is not a suit against the State." 521 U.S. at 296 (O'Connor, J., concurring)*; see* OWRB Br. at 4-5. The Tribes' claims would subject all water *rights* owned by others to defeasance by virtue of the alleged "prior and paramount" rights of the Tribes, leaving them subject to tribal regulation, with only the

hollow promise the Tribes would not "challenge" whatever "*current use*" existing permit holders may be making of their permitted rights.  *Kemp* recognizes that *Ex parte Young* does not allow an "officers' suit" to circumvent immunity for such claims.  478 F.3d at 1256.

The Tribes' claim that the June 2010 Transfer Agreement violates 25 U.S.C. § 177 also exposes the OWRB to significant monetary liability.  If the Agreement were held to violate 25 U.S.C § 177, the Transfer Agreement would have no further "validity in law or equity."   Part and parcel of the Transfer Agreement is the assumption by the Water Utilities Trust of OWRB's liability to the United States for the Sardis Project—in the amount of $ 27,814,262.49 for past obligations; a future obligation of $38,202,796.83; and an ongoing annual operation management and replacement obligation so $147,200.00. This liability exists pursuant to the 1974 Sardis Contract between the United States and OWRB. OWRB's liability under the 1974 Sardis Contract was established pursuant to a settlement decree in *United States v. Oklahoma*, No. Civ. 98-00521 (N.D. Okl. Sept. 3, 2009).   The Transfer Agreement transfers all rights and obligations, including monetary obligations of OWRB, under the 1974 Contract, to the Water Utilities Trust.   If the Transfer Agreement is determined to be void and unenforceable, OWRB has a significant risk of immediate monetary liability to the United States that would not be remediable under the savings provisions of that Agreement.

The Tribes' representations that Tenth Circuit law allows an *Ex parte Young* action whenever there is a claim for prospective relief is simply false. The cases the

Tribes cite do not present the retroactive effects present here, and no Tenth Circuit case, including those the Response cites, conflicts with *Kemp.* Judge Tacha's decision in *Tarrant Regional Water District v. Sevenoaks*, 545 F.3d 906, 913 (10th Cir. 2008), Response at 9, holds only that the narrow relief the Texas water district requested, to allow its single permit application to go forward, was indeed prospective.  Contrary to the Tribes' Response, the cigarette tax case, *Muscogee (Creek) Nation v. Pruitt*, 2012 WL 627967, *6 n.4 (10th Cir. 2012), recognizes *Kemp* as pertinent guidance.  *Elephant Butte Irrigation District v. Dept. of the Interior,* 160 F.3d 602, 612-13 (10th Cir. 1998), Response 7, while it affected payments to the state under a prior lease, only affected prospective payments "and will have minimal effect on the sovereignty and autonomy of New Mexico."  Similarly, *Osage Nation v. Oklahoma Tax Comm'n,* Fed. Appx. 13, 19-21 (10th Cir. 2007), only sought to enjoin future taxation, and *Timapanagos Tribe v. Conway,* 286 F.3d 1195, 1205-06 (10th Cir. 2002), only sought prospective injunctive relief against state regulation of hunting and fishing on Indian lands within the Uintah Reservation, expressly distinguishing *Coeur d'Alene.*  Equally inapposite is *Powder River Basin Res. Council v. Babbit,* 54 F.3d 1477, 1483 (10th Cir. 1995), which only held environmental plaintiffs' claims to invalidate a state statute prohibiting attorneys' fees did not violate the Eleventh Amendment because the relief was prospective as of filing of the action.[3]  None of these cases present the retroactive impact on longstanding state

---

[3] Language of *Powder River* the Response cites at 5-6, quoting *Green v. Monsour,* 474 U.S. 64, 73 (1985), is misleading.  The Supreme Court did not hold in *Green,* and has never held, that declaratory judgments are *only* construed as retroactive if there is no claim of continuing violation of federal law.  To the contrary, the Supreme Court made

regulation underlying state agency and private property rights that render this case the equivalent of a quiet title action present in *Coeur d'Alene*.  The Tribes simply cite no case where *Ex Parte Young* was held to allow claims that would invalidate a State regulatory scheme underlying long-standing property interests and underpinning State proprietary interests.[4]

Simply put, the Complaint's claims against the OWRB Defendants are barred under the Eleventh Amendment to the United States Constitution.

## II.   The Response misses the Rule 19 mark because it fails to recognize the sovereign interests affected by the Complaint.

The Tribes' refusal to address the impact on other sovereigns of its "prior and paramount" regulatory power claim leads to a complete failure to address the OWRB Defendants' showing that this action cannot proceed in equity and good conscience in the absence of the OWRB and the United States.  Quite simply, there are contracts between sovereigns that recognize regulation of Southeast Oklahoma waters in entities other than the Tribes that would be in conflict with any judgment vesting "prior and paramount" regulatory authority in the Tribes.  The Tribes mistakenly assume OWRB is not immune from suit; ignore the impact of their declaratory claims on OWRB's and federal interests, including upon the sovereigns' contractual allocations of regulatory authority over Sardis Lake and other Southeast Oklahoma water projects; and fail to recognize the sovereign

---

the very different holding in *Green* that, where there is no claim for prospective relief, any request for a declaratory judgment against the State is retrospective and therefore Eleventh Amendment-barred.

[4] This case also resembles *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 74-75 (1996).   Congress' preference for state court adjudications under the McCarran amendment is an additional reason not to pierce Eleventh Amendment immunity here.

interests of the United States that will be adversely affected by this action.  Those points are addressed in turn below.

## A. The Tribes' arguments against OWRB's indispensability rest on continued mischaracterization of the Tribes' claims.

The Tribes premise their contention that OWRB is not a required, much less an indispensable party, on describing their Complaint as seeking "only to challenge the Defendants' claim of plenary jurisdiction over all Treaty Territory waters . . . and to enjoin their continuing violations of federal law."  Response at 14.  Nothing could be further from the truth.  The Tribes not only challenge the State's alleged claim of "plenary jurisdiction,"[5] they also claim they have "prior and paramount" regulatory power over, and the right to "control," water resources in the "Treaty Territory." Complaint, ¶87(a).  It is not true that "virtually all" the relief the Tribes seek is prospective.  Response at 8.  Rather, like the tribe in *Coeur d'Alene*, the Tribes deploy prospective-sounding injunctive relief in Trojan Horse fashion to mask requests for declaratory relief that would, if successful, invalidate all existing rights and leave the Tribes in regulatory control of Southeastern Oklahoma's water resources.  Consequently, the action cannot be maintained under the *Ex parte Young* exception to Eleventh Amendment immunity, and neither *Tarrant Regional Water District v. Hermann,* 2007

---

[5] This claim appears to be a "straw man" for the Tribes to launch premature litigation. *See* Reply of Governor Fallin to Motion to Dismiss at 7.  The Supremacy Clause is well recognized in Oklahoma law, as it must be. The June 2010 Transfer Agreement, alleged to violate federal law for containing the "plenary power" phrase, acknowledges the relevance of federal law, stating: "plenary jurisdiction and authority of the State over water in the State *pursuant to State and Federal law*" shall not be affected by the Agreement.  June 2010 Transfer Agreement, Ex. 3 to Complaint, § 2.4 (emphasis added).

WL 3226812, *4-5 (W.D. Okla. 2007) (other States' compact rights not affected), nor any other case the Tribes cite allows such a claim to proceed against the non-joined State agency. The recognition that the retroactively devastating declaratory relief bars claims against OWRB also refutes most of the arguments the Tribes advance to contest OWRB's indispensability.

### B. The Tribes ignore the effect on Federal contracts of the Tribes' claims to "prior and paramount" regulatory authority.

The Tribes brush aside the OWRB Defendants' detailed presentation of contractual commitments contemplating State, Federal, and local regulation of waters within federal water projects, OWRB Br at 9-16, inaccurately stating they do not allege claims to invalidate the contracts. This Court, however, cannot declare the Tribes have "prior and paramount rights" and "regulatory authority," vesting them with the "right to control water resources in the Treaty Territory," without affecting the rights of the OWRB and/or the United States in:

- The 1974 Sardis Lake Contract between OWRB's predecessor agency and the U. S. Army Corps of Engineers ("Corps"), providing that "regulation of the use of water withdrawn or released from the aforesaid storage space shall be the sole responsibility of the User [OWRB]." 1974 Contract, Art. 2; OWRB Br. at 13 and Ex. 1.
- The June 2010 Transfer Agreement, transferring the 1974 Sardis Lake Contract from OWRB to the Oklahoma City Water Utilities Trust, which the Complaint requests the Court declare violates 25 U.S.C. § 177 (also known as the "Non-Intercourse Act"), Complaint, ¶ 86. That Non-Intercourse Act claim would render the Agreement void and of no "validity in law or equity." 25 U.S.C. § 177. The Tribes' parsing of the provisions of the Agreement as to other provisions, Response at 14-15, do not controvert that their pleaded claim would void the Agreement, pursuant to which the Trust makes substantial payments otherwise payable by OWRB to the Corps. OWRB Br. at 4-5.
- The 1974 Contract between the Hugo Municipal Authority and the Corps providing for the operation and management of Hugo Reservoir, providing that

the Authority will have the right to regulate the use of water withdrawn or released from the Reservoir, and authorizing the Corps to make releases as it determines.  1974 Contract, Art. 1(c), 2; OWRB Br. at 11-12.

The OWRB and the United States have interests under each of the Reservoir agreements that would be affected by the Tribes' requests for a declaration of their regulatory primacy and control, and the Tribes' requested relief threatens to invalidate OWRB's substantial interests under the Transfer Agreement.[6]  In other words, the Tribes' claims will "as a practical matter impair or impede" the abilities of OWRB and the United States to "protect [their] interests," Fed. R. Civ. P. 19(a)(1)(B)(i), or subject them to inconsistent obligations under contracts the performance of which are affected or may be invalidated.   Fed. R. Civ. P. 19(a)(1)(B)(ii).   The contention that OWRB and the United States are not "required" parties does not withstand scrutiny.

The Tribes' arguments also ignore the "strong policy . . . favoring dismissal when a court cannot join a [required party] because of sovereign immunity."  *Davis v. United States*, 343 F.3d 1282, 1293 (10th Cir. 2003) (alteration in original and quoted authority omitted).   The federal courts' indispensability jurisprudence does not countenance employing balancing of interests under Rule 19 to abrogate sovereign immunity: "[W]hen . . . a necessary party . . . is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves."  *Id.* at 1293 (alteration in original and quoted authority omitted); *Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008)

---

[6] The Tribes' claim that the June 2010 Transfer Agreement violates 25 U.S.C. § 177 also exposes the OWRB to significant monetary liability. *See* Point I.B, *supra*.

("[W]here sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a *potential* for injury to the interests of the absent sovereign.").  *See also Vann v. Salazar,* 2011 WL 4953030 *8, (D.D.C. 2011) (inability to join Cherokee Nation requires Rule 19 dismissal).

The Tribes rely on cases involving non-joined private parties to contend that the OWRB Defendants' potential representation of OWRB is a significant factor, *see, e.g., Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.,* 94 F.3d 1407 (10th Cir. 1996), but ignore that their action will, in fact, "impair or impede" the abilities of unjoinable sovereigns to protect critical sovereign interests.  Prejudice to OWRB and the United States cannot be averted by protective measures in a judgment implementing the broad regulatory demands of the Complaint, and adequate relief cannot be rendered in the United States and OWRB's absence, because, if the Tribes' broad claims were successful, the sovereigns would remain subject to contractual rights and duties in conflict with the Tribes' court-ordered rights.

The Tribes' reliance on cases where the tribal suit would not affect the United States' interest, *see, e.g., Choctaw & Chickasaw Nations v. Seitz,* 193 F.2d 456 (10th Cir. 1951), Response at 20-23, again misses the mark.  Here, the United States entered contracts allocating regulatory rights to OWRB and other State entities and reserved certain rights to itself that would clearly conflict with comprehensive tribal "regulatory or authority over Treaty Territory water resources."[7]  Complaint, ¶87(a).  The United States'

---

[7]  The contention that the OWRB Defendants did not "identify any factual basis" for this contractual impairment effect is flagrantly false.  OWRB Defendants' Brief contained six

14

interest is distinct from its position as ward for the Tribes.  *See Navajo Tribe of Indians v. New Mexico*, 809 F.2d 1455, 1473 (10th Cir. 1987) (United States indispensable because its interests were not aligned with the tribe's interests and was it in privity with third parties opposed by tribe).

### Conclusion

The apparent purpose of this case is to invalidate the regulatory scheme by which water in Southeastern Oklahoma has been regulated for over a century. The Tribes' attempt at a hydrologic "land grab," *i.e.*, the Tribes' effort to wrest control of water resources in a major portion of the State, while claiming "prior and paramount" rights to the affected waters, falls outside any exception to the Eleventh Amendment immunity of Oklahoma's water resources administrator, OWRB.   These same allegations, if successful, would compromise—or invalidate—federal contracts governing water projects in the Basins to which OWRB and/or the United States are parties and would impair or impede, or perhaps destroy, the sovereigns' abilities to protect their interests in such contracts.  The Complaint should be dismissed.

---

pages of argument, attached three contracts, and cited specific contractual provisions that are flatly inconsistent with comprehensive tribal regulatory authority.  *See* OWRB. Br. at 9-16.

Respectfully submitted,

**OKLAHOMA      OFFICE      OF      THE
ATTORNEY GENERAL**

By: *s/Patrick R. Wyrick*
    Patrick R. Wyrick, OBA #21873
    SOLICITOR GENERAL
    313 NE 21st Street
    Oklahoma City, OK 73105
    Phone: (405) 522-4393
    Patrick.Wyrick@oag.ok.gov

    Neal Leader
    SENIOR ASSISTANT ATTORNEY GENERAL
    313 NE 21st Street
    Oklahoma City, OK 73105
    Phone: (405) 522-4393
    Neal.Leader@oag.ok.gov

**MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.**

By: *s/Lynn H. Slade*
    Lynn H. Slade (NM Bar No. 2501)
    Maria O'Brien (NM Bar No. 7231)
    William C. Scott (NM Bar No. 3225)
    Bank of America Centre
    500 4th Street NW, Suite 1000
    Albuquerque, NM 87102
    Phone: (505) 848-1800
    Lynn.slade@modrall.com
    wscott@modrall.com
    mobrien@modrall.com

***Counsel for Oklahoma Water
Resources Board Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March , 2012, a true and complete copy of the within and foregoing **REPLY TO TRIBES' RESPONSE TO OKLAHOMA WATER RESOURCES BOARD'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(7), and 19 [Doc. 88]**was electronically transmitted to the Clerk of the Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

Michael Burrage                                         Bob Rabon
mburrage@whittenburragelaw.com              Bob.rabon@sbcglobal.net
             Attorneys for Choctaw Nation of Oklahoma and Chickasaw Nation


Craig B. Keith                                            Brian Nazarenus
Craig.keith@okc.gov                                  bnazarenus@rcalaw.com
             Attorneys for City of Oklahoma City and Oklahoma City Water Trust


Stephen H. Greetham                               Steven K. Mullins
StephenGreetham@chickasaw.net            Steve.Mullins@gov.ok.gov
Attorney for Chickasaw Nation                 Attorney for Governor Mary Fallin


I further certify that on this 13th day of March, 2012, I served the attached document via e-mail on the following, who are not registered participants of the ECF System:

Douglas B. L. Endreson
Peng Wu
dendreson@sonosky.com
pwu@sonosky.com
Attorneys for Chickasaw Nation and
Choctaw Nation


*s/Lynn H. Slade*
Lynn H. Slade

Y:\dox\client\84982\0001\PLEADING\W1655765.DOCX

17